Karl Geercken
Christopher J. Borchert
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400
Karl.Geercken@alston.com
Christopher.Borchert@alston.com

*Attorneys for Plaintiff IFMK Realty II, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IFMK REALTY II, LLC, a Nevada Limited Liability Company, | Civil Action No. |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| ATLANTIC PROPERTY DEVELOPMENT, LLC, a New Jersey Limited Liability Company; FRANCIS M. FERRARI, an individual; FELIX NIHAMIN, an individual; and JOHN DOES 1-10, | *Document Filed Electronically* |
| Defendants. | |

Plaintiff IFMK Realty II, LLC ("IFMK"), by and through its attorneys, Alston & Bird LLP,

for its Complaint against Defendants Atlantic Property Development, LLC ("Atlantic"), Francis

M. Ferrari ("Ferrari"), and Felix Nihamin ("Nihamin") (collectively, "Defendants"), alleges as

follows:

## PARTIES

1.      IFMK is a Nevada limited liability company with a principal place of business

located at 9101 Alta Drive, Suite 1801, Las Vegas, Nevada 89145.

2.      Atlantic is a New Jersey limited liability company with a principal place of business

located at 116 Village Boulevard, Suite 22, Princeton, New Jersey 08540.

3.      Ferrari is the Chief Executive Officer of Atlantic and an individual with an address located at 1671 Keely Lane, Sarasota, Florida 34232.

4.      Nihamin is the General Counsel and Director of Business Development of Atlantic and an individual with an address located at 707 Cinnamon Lane, Franklin Lakes, New Jersey 07471.

5.      Defendants John Does 1-10 are individuals and/or entities, including officers, directors, agents, and/or employees of the Defendants, whom IFMK believes may have engaged in the activities discussed herein and about which more detail may become available to IFMK through additional investigation and discovery.  IFMK expressly reserves the right to add specific individuals and entities as Defendants to this action.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Atlantic because it is a limited liability company registered to do business in New Jersey and has purposely availed itself of the rights and benefits of New Jersey law be engaging in systematic and continuous contacts with the State of New Jersey.  This Court also has personal jurisdiction over Atlantic because its activities in this State gave rise to the claims alleged herein.

8.      This Court has personal jurisdiction over Ferrari because he has purposely availed himself of the rights and benefits of New Jersey law by engaging in systematic and continuous contacts with the State of New Jersey.  This Court also has personal jurisdiction over Ferrari because his activities in this State gave rise to the claims alleged herein.

9.      This Court has personal jurisdiction over Nihamin because he is a resident of New Jersey and has purposely availed himself of the rights and benefits of New Jersey law by engaging in systematic and continuous contacts with the State of New Jersey.  This Court also has personal jurisdiction over Nihamin because his activities in this State gave rise to the claims alleged herein.

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

## FACTUAL ALLEGATIONS

### Atlantic Seeks to Recruit IFMK for Potential Business Opportunities

11.     On or around September 15, 2016, Nihamin, on behalf of Atlantic, met in person with IFMK's representative, Alexander Karshenboym ("Karshenboym"), to recruit IFMK for potential business ventures with Atlantic.  In particular, Atlantic sought to partner with IFMK to acquire and develop real property in southern New Jersey.

12.     In connection with Atlantic's efforts to recruit IFMK for potential business ventures, Nihamin sent Karshenboym marketing materials for Atlantic (the "Marketing Materials").

13.     The Marketing Materials stated that "Atlantic Property Development focuses on developing, optimizing, and rehabilitating distressed properties on the New Jersey Shore destroyed by Hurricane Sandy.  Atlantic rebuilds these properties in a cost effective and timely manner by utilizing modular construction to maximize the return on investment."

14.     The Marketing Materials included a description of Atlantic's "Team" and identified Nihamin as Atlantic's General Counsel and Director of Business Development.  The Marketing

Materials also noted that "Nihamin brings more than 20 years of specialized real estate and legal experience to Atlantic Property Development."

15.     The Marketing Materials provided that the "management team at Atlantic Property Development has over 70 years of combined real estate experience in construction, development and management."  The Marketing Materials further provided that Atlantic has "built over 200 ground-up construction units for residential use in moderately priced areas as well as high net worth areas such as Southampton, NY."

16.     The Marketing Materials made repeated references to Atlantic's investors' capital as being "secured by ownership in the property."  The Marketing Materials also provided that capital is to be "allocated for purchase of land and modular construction."

17.     Following the September 15th in-person meeting between Nihamin and Karshenboym, Nihamin sent Karshenboym an e-mail introducing him to Ferrari, noting that Ferrari is "one of my partners" and "the principal of Atlantic."  Shortly thereafter, Nihamin informed Karshenboym that Atlantic wanted to move forward with a business relationship with IFMK.

**IFMK Agrees to Form LLCs with Atlantic as Managing Member**

18.     As set forth below, from in or around November 2016 to in or around May 2018, Atlantic and IFMK entered into operating agreements (the "Operating Agreements") to form three limited liability companies (the "LLCs"), each created with the purpose of acquiring, developing, and selling real property in southern New Jersey (the "Properties"):

    a.     On November 2, 2016, IFMK and Atlantic entered into an operating agreement for 313 Bayview, LLC ("Bayview").  A true and correct copy of the Bayview Operating Agreement is attached hereto as Exhibit A.  On December 12, 2016,

Bayview acquired real property located at Lot 14 in Block 922.02 on the Township of Toms River Tax Map (commonly known as 313 West Bayview Drive, Toms River, New Jersey 08753);

b.     On November 3, 2016, IFMK and Atlantic entered into an operating agreement for 206 Sailfish, LLC ("Sailfish").  A true and correct copy of the Sailfish Operating Agreement is attached hereto as Exhibit B.   On November 8, 2016, Sailfish acquired real property located at Lot 14 in Block 931.03 on the Township of Toms River Tax Map (commonly known as 206 Sailfish Way, Toms River, New Jersey 08754); and

c.     On May 8, 2018, IFMK and Atlantic entered into an operating agreement for 331 North Bay LLC ("North Bay").  A true and correct copy of the North Bay Operating Agreement is attached hereto as Exhibit C.   On May 8, 2018, North Bay acquired real property located at Lots 11 and 12 in Block 43.05 on the Township of Brick Tax Map (commonly known as 331 North Bay Drive and 333 North Bay Drive, Brick, New Jersey 08724).

19.     IFMK entered into the Operating Agreements based on certain representations from Ferrari and Nihamin, made on behalf of Atlantic during the negotiations of the LLCs in the timeframes set forth above.  For instance, during each of those time periods, Ferrari and Nihamin repeatedly promised and assured IFMK that they and Atlantic would use their "extensive experience" and wherewithal to identify suitable properties for investment and development purposes and would use their good faith efforts to manage, develop, and operate the properties through the LLCs in the best interests of the LLCs and their members.  Ferrari and Nihamin also

made clear that Atlantic and IFMK would each contribute capital for the various business projects pursued by the LLCs.

20.     IFMK relied on these promises and assurances in entering into the Operating Agreements.

21.     Based on these representations, all the Operating Agreements designate Atlantic as the Managing Member and IFMK as the Non-Managing Member of the LLCs.

**Atlantic Fails to Make its Required Initial Capital Contributions for all the LLCs**

22.     The Operating Agreements governing the LLCs were prepared in substantial part by Nihamin, as Atlantic's general counsel, and are substantively identical.

23.     Under the terms of the Operating Agreements, IFMK and Atlantic were required to make Initial Capital Contributions, as set forth in Schedule A to the Operating Agreements, "simultaneously with such Member's execution of" the respective Operating Agreement.  *See, e.g.*, Ex. A, § 8.1 and Schedule A.  Per the express terms of the Operating Agreements, this Initial Capital Contribution was in exchange for units of the respective LLC.  *See, e.g.*, *id.* § 8.1 ("Each Member shall make the Initial Capital Contribution simultaneously with such Member's execution of this Agreement . . . , *and shall receive the number of Units of Membership Interest and Sharing Ratio described for that Member on Schedule A*.") (emphasis added).  In other words, each Member's Initial Capital Contribution was the consideration for its membership interest in the LLC.

24.     Upon executing the Bayview Operating Agreement, IFMK agreed to contribute – and did contribute – $440,000.00 as its Initial Capital Contribution.  In exchange, IFMK received 628 units, or 62.8%, of Bayview.  *See id.*, Schedule A.

25.     IFMK understood that Atlantic would contribute $260,300.00 as its Initial Capital Contribution in exchange for 371 units, or 37.2%, of Bayview.  *See id.*  Upon information and belief, Atlantic failed to contribute any capital to Bayview in accordance with Ferrari's and Nihamin's representations and the terms of the Bayview Operating Agreement.

26.     Upon executing the Sailfish Operating Agreement, IFMK agreed to contribute – and did contribute – $280,000.00 as its Initial Capital Contribution.  In exchange, IFMK received 616 units, or 61.6%, of Sailfish.  *See* Ex. B, Schedule A.

27.     IFMK understood that Atlantic would contribute $174,600.00 as its Initial Capital Contribution in exchange for 384 units, or 38.4%, of Sailfish.  *See id.*  Upon information and belief, Atlantic failed to contribute any capital to Sailfish in accordance with Ferrari's and Nihamin's representations and the terms of the Sailfish Operating Agreement.

28.     Upon executing the North Bay Operating Agreement, IFMK agreed to contribute – and did contribute – $999,999.00 as its Initial Capital Contribution.  In exchange, IFMK received 538.2 units, or 53.82%, of North Bay.  *See* Ex. C, Schedule A.

29.     IFMK understood that Atlantic would contribute $857,500.00 as its Initial Capital Contribution in exchange for 461.8 units, or 46.18%, of North Bay.  *See id.*  Upon information and belief, Atlantic failed to contribute any capital to North Bay in accordance with Ferrari's and Nihamin's representations and the terms of the North Bay Operating Agreement.

30.     Atlantic's failure to contribute its Initial Capital Contributions to any of the LLCs means that it never acquired any units of the LLCs and never obtained a membership interest in the LLCs.  Atlantic therefore never had the authority to act on behalf of the LLCs.

31.     As a result of Atlantic's failure to contribute its Initial Capital Contributions to the LLCs, the LLCs acquired the Properties using only funds contributed by IFMK.

32.     Atlantic's failure to contribute any capital to any of the LLCs, along with its other misdeeds and breaches alleged herein, evinces that it never intended to perform under the Operating Agreements.

**Atlantic Mortgages the Properties to Multiple Lenders without IFMK's Knowledge or Consent in Violation of the Operating Agreements**

33.     The Operating Agreements specify certain actions the Managing Member cannot take without the "Consent of the Members after written notice from the Managing Members to the Members requesting same." *See, e.g.*, Ex. A, § 6.1.

34.     "Consent of the Members" is a defined term that means: "An affirmative vote of the Members owning one hundred percent (100%) of the Units and memorialized in an instrument signed by each of them." *See, e.g.*, *id.* § 1.15.  Each of the Operating Agreements provides for only two members: Atlantic and IFMK.  So, any action requiring Consent of the Members necessarily requires IFMK's knowledge and written consent.

35.     Among the specified actions the Managing Member cannot take without Consent of the Members is any action involving "financing, additional financing, refinancing and/or prepayment of any existing mortgage, including but not limited to the Purchase Money Loan and/or any Voluntary Loan." *See, e.g.*, *id.* § 6.1(g).

36.     Despite this express restriction, IFMK recently learned that Atlantic secured financing purportedly on behalf of the LLCs for all the Properties, without IFMK's knowledge or written consent.

37.     Specifically, IFMK learned that Atlantic secured financing purportedly on behalf of Bayview through two separate mortgages on property owned by Bayview: (i) a mortgage with Finance of America Commercial LLC ("Finance of America"), executed on or around March 13, 2018, in the amount of $682,500.00; and (ii) a mortgage with Mark Rekhtman ("Rekhtman"),

8

executed on or around March 19, 2019, in the amount of $750,000.00. These mortgages well exceed the combined equity in, and construction costs of, the property owned by Bayview.

38.     IFMK also learned that Atlantic secured financing purportedly on behalf of Sailfish through two separate mortgages on property owned by Sailfish: (i) a mortgage with Finance of America, executed on or around May 14, 2019, in the amount of $452,000.00; and (ii) a mortgage with Rekhtman, executed on or around May 14, 2019, in the amount of $750,000.00. These mortgages well exceed the combined equity in, and construction costs of, the property owned by Sailfish.

39.     IFMK further learned that Atlantic secured financing purportedly on behalf of North Bay through two separate mortgages on property owned by North Bay: (i) a mortgage with Finance of America, executed on or around February 28, 2019, in the amount of $1,406,250.00; and (ii) a mortgage with Rekhtman, executed on or around March 19, 2019, in the amount of $750,000.00 (collectively with the mortgages identified above, the "Fraudulent Loans"). These mortgages well exceed the combined equity in, and construction costs of, the property owned by North Bay.

40.     Upon information and belief, Ferrari and Nihamin signed personal guaranties in connection with some or all of the Fraudulent Loans.

41.     At no point did Atlantic, Ferrari, or Nihamin ever seek consent from IFMK to obtain the Fraudulent Loans. In fact, at no point did Atlantic, Ferrari, or Nihamin even inform IFMK about the Fraudulent Loans or the corresponding encumbrances on the Properties.

42.     When IFMK learned about the Fraudulent Loans, it tried to contact Ferrari. Despite multiple attempts through phone, email, and written correspondence, IFMK has been unable to reach Ferrari or obtain information from Ferrari about the LLCs.

43.      In fact, on May 6, 2020, IFMK sent a letter to Ferrari as CEO of Atlantic Property, in which IFMK invoked the dispute resolution provisions of the Operating Agreements in an attempt to engage in a dialogue about resolving the matters addressed in this pleading.  Neither Atlantic Property nor Ferrari responded to the letter.

44.      Upon information and belief, Ferrari is intentionally avoiding any contact with IFMK.

**IFMK Learns Atlantic Likely Used Fraudulent Documents to Secure the Fraudulent Loans**

45.      On May 15, 2020, IFMK's undersigned counsel corresponded via telephone with Finance of America in an attempt to obtain documents concerning those loans.  Undersigned counsel represented to Finance of America that IFMK holds a majority interest in Bayview, Sailfish, and North Bay.  A representative from Finance of America responded that Ferrari obtained the loans, stated that Finance of America had a "different view of what ownership is," and asked for documents supporting IFMK's position that it holds a majority interest in the borrowers.  Later that day, undersigned counsel provided Finance of America with the Bayview, Sailfish, and North Bay Operating Agreements.

46.      On June 1, 2020, Finance of America emailed undersigned counsel and stated: "Per our counsel's direction, we are unable to further communicate with you as an authorized party to these loans."

47.      Upon information and belief, Ferrari, on behalf of Atlantic, secured financing from Finance of America through fraudulent documentation and/or documentation that did not mention the need for IMFK's prior written consent to the financing and did not accurately represent the ownership of the membership interests in Bayview, Sailfish, or North Bay.

**IFMK Learns Atlantic Purportedly Pledged 100% of the Membership Interests in the LLCs to Obtain Financing for Other Projects**

48.     On June 4, 2020, IFMK learned about a lawsuit filed against Ferrari, Atlantic, Bayview, Sailfish, and North Bay, among other defendants, in the Superior Court of New Jersey, Ocean County, Chancery Division, captioned *Alan Kapson, et al. v. Francis Ferrari, Jr., et al.*, Docket No. OCN-C-000078-20 (the "Kapson Action").

49.     The plaintiffs in the Kapson Action are individual investors who allegedly loaned Ferrari and/or Atlantic funds to acquire and develop additional property in southern New Jersey.

50.     Upon information and belief, and according to the pleadings in the Kapson Action, Ferrari misrepresented to those investors that he solely owned and managed Bayview, Sailfish, and North Bay.

51.     Upon information and belief, and according to the pleadings in the Kapson Action, Ferrari purported to pledge 100% of the Membership interests in Bayview, Sailfish, and North Bay as collateral for loans from those investors.

52.     Upon information and belief, and according to the pleadings in the Kapson Action, Ferrari named North Bay as an additional guarantor in connection with loans from those investors.

53.     Ferrari and Atlantic took these actions without IFMK's knowledge or consent and in violation of the Operating Agreements.  These actions further evince that he and Atlantic never intended to perform under the Operating Agreements.

**COUNT ONE**
**(Fraud / Rescission against Atlantic, Ferrari, and Nihamin)**

54.     IFMK repeats and realleges the preceding allegations as though fully set forth herein.

55.     On or around September 15, 2016, November 2, 2016, November 3, 2016, and May 8, 2018, Ferrari and Nihamin made certain representations about Atlantic's intentions with respect

11

to potential business opportunities with IFMK.  For instance, Ferrari and Nihamin repeatedly promised and assured IFMK that they and Atlantic would use their "extensive experience" and wherewithal to identify suitable properties for investment and development purposes and would use their good faith efforts to manage, develop, and operate the properties through the LLCs in the best interests of the LLCs and their members.  Ferrari and Nihamin also represented that Atlantic and IFMK would each contribute capital for those LLCs to acquire and develop real property.

56.     At the time Ferrari and Nihamin made these promises and assurances, they and Atlantic had no intention of fulfilling them and did not intend to try to fulfill them.  Instead, Ferrari and Nihamin, upon information and belief, made the promises and assurances to induce IFMK to enter into the Operating Agreements because they secretly intended to use the LLCs to benefit and enrich Atlantic and themselves by entering into unauthorized and/or self-dealing transactions through Atlantic as the Managing Member of the LLCs and/or to ultimately obtain title to the Properties for Atlantic.

57.     In connection with these efforts, Nihamin, on behalf of Atlantic, took steps to secure IFMK's capital, knowing that those funds would be the only funds used to acquire the Properties.  For example, on May 6, 2018, Nihamin, on behalf of Atlantic, emailed Karshenboym about acquiring property on behalf of North Bay, and included wire instructions and Nihamin's trust account information, directing Karshenboym to "deposit the acquisition funds tomorrow." Upon information and belief, Nihamin knew that Atlantic had no intention of contributing any capital to North Bay, contrary to Ferrari's and Nihamin's representations and the North Bay Operating Agreement, and knew that Atlantic would not contribute any capital to any of the LLCs.

58.     Ferrari's and Nihamin's intentions never to fulfil the promises and assurances alleged herein are evidenced by his, Nihamin's, and Atlantic's subsequent acts, including but not

limited to: (i) Atlantic's failure to contribute any capital to the LLCs; (ii) Atlantic's surreptitious execution of at least two mortgages on all the Properties, without IFMK's knowledge or consent and likely through fraudulent documentation, in violation of the Operating Agreements and for amounts that well exceed the equity in, and construction costs of, the Properties; (iii) Ferrari's misrepresentations to other investors about solely owning and managing the LLCs; (iv) Ferrari's purported pledging of 100% of the Membership interests in the LLCs as collateral for financing for other projects; (v) Ferrari's naming of North Bay as an additional guarantor in connection with other loans without IFMK's knowledge or consent; and (vi) Ferrari's subsequent refusal and failure to communicate with IFMK regarding the Properties or the LLCs.

59.     Ferrari and Nihamin intended for IFMK to rely on their promises that Atlantic would operate the LLCs in the entities' and Members' best interests and consistent with Atlantic's obligations under the Operating Agreements.

60.     Instead, Ferrari and Nihamin obtained IFMK's funds, acquired the Properties with those funds, and secured additional funds for themselves and/or Atlantic through the Fraudulent Loans.

61.     IFMK reasonably relied on Ferrari's and Nihamin's promises upon entering into the Operating Agreements and contributing its Initial Capital Contributions to the LLCs, which were the only funds used to acquire the Properties.

62.     Ferrari's, Nihamin's, and Atlantic's actions constitute both equitable and legal fraud and caused substantial and significant harm to IFMK.

63.     Ferrari's, Nihamin's, and Atlantic's deliberate, conscious and intentional fraudulent acts were willful, wanton, and malicious, and were done in conscious disregard of the

best interests of the LLCs and IFMK in order to obtain an improper personal benefit. IFMK is therefore also entitled to an award of punitive damages.

64. As a result of Ferrari's and Atlantic's fraud:

a. the Properties should now be deemed to be held in constructive trust for the benefit of IFMK;

b. the Operating Agreements should be rescinded;

c. title to the Properties should be transferred to IFMK as the real party-in-interest; and

d. IFMK should be awarded damages in an amount to be determined at trial to compensate it for its losses, together with pre- and post-judgment interest thereon.

## COUNT TWO
### (Breach of the Operating Agreement against Atlantic)

65. IFMK repeats and realleges the preceding allegations as though fully set forth herein.

66. To the extent the Operating Agreements are not found to be null and void by virtue of Atlantic's, Ferrari's, or Nihamin's fraud and/or failure of consideration, Atlantic breached multiple provisions of the Operating Agreements, resulting in damage to IFMK.

67. Atlantic breached the Operating Agreements by failing to contribute its required Initial Capital Contributions. Section 8.1 of the Operating Agreements provides: "Each Member *shall* make the Initial Capital Contribution simultaneously with such Member's execution of this Agreement, except as otherwise indicated on Schedule A . . ." (emphasis added). *See, e.g.*, Ex. A, § 8.1. No Schedule A indicates otherwise.

68.     To date, Atlantic has failed to make any of its required Initial Capital Contributions pursuant to the Operating Agreements.

69.     As a result, IFMK assumed the entirety of the financial risk associated with the LLCs.

70.     Atlantic also breached § 6.1(g) of the Operating Agreements by obtaining the Fraudulent Loans and encumbering the Properties without IFMK's knowledge and written consent.  In addition, Atlantic breached § 6.1(f) of the Operating Agreements by engaging sales brokers to sell the Properties without first obtaining IFMK's written consent.

71.     Atlantic's actions in obtaining the Fraudulent Loans and encumbering the Properties have exposed the LLCs to a loss of the Properties and IFMK to a loss of its entire investment.

72.     Although IFMK has attempted to contact Ferrari to obtain information from Atlantic about the LLCs, IFMK has received no response and none of the requested information.

73.     Due to Atlantic's breaches of contract, misfeasance, fraud, breach of fiduciary duty and other misconduct:

     a.     Atlantic should be removed as a Member of the LLCs; and

     b.     IFMK has suffered, and will continue to suffer, damages, as a result of which it is entitled to recover those damages in an amount to be determined at trial to compensate it for its losses together with pre- and post-judgment interest thereon.

## COUNT THREE
### (Breach of Fiduciary Duty against Atlantic)

74.     IFMK repeats and realleges the preceding allegations as though fully set forth herein.

75.     To the extent the Operating Agreements are not found to be null and void by virtue of Atlantic's, Ferrari's, or Nihamin's fraud and/or failure of consideration, Atlantic breached its fiduciary duty to IFMK.

76.     Under the New Jersey Revised Uniform Limited Liability Company Act, in a member-managed LLC, each member owes each other member a duty of care.  N.J.S.A. 42:2C-39(a)-(c).  Atlantic thus owed IFMK a fiduciary duty of care.

77.     Atlantic breached its fiduciary duty to IFMK by, among other things, failing to contribute its required Initial Capital Contributions, obtaining the Fraudulent Loans, encumbering the Properties without IFMK's knowledge or consent, and completely abandoning its duties as the Managing Member of the LLCs.

78.     Atlantic's breach of fiduciary duty has injured IFMK, as IFMK has been forced to take action to protect the LLCs and Properties.  Among other things, IFMK has expended substantial resources uncovering Atlantic's wrongdoing and seeking to remedy the harm done to the LLCs.  For instance, IFMK has been forced to obtain additional insurance policies for the Properties due to Atlantic's complete abandonment of its responsibilities as Managing Member of the LLCs.

79.     Although IFMK has attempted to contact Ferrari to obtain information from Atlantic about the LLCs, IFMK has received no response and no such information.

80.     The deliberate, conscious and intentional acts of Atlantic were willful, wanton, and malicious, and were done in conscious disregard of the best interests of the LLCs and IFMK and

in order to obtain an improper personal benefit.  IFMK is therefore also entitled to an award of punitive damages.

81.     Due to Atlantic's breach of fiduciary duty, fraud, breaches of contract and other misconduct:

      a.      Atlantic should be removed as a Member of the LLCs; and

      b.      IFMK has suffered, and will continue to suffer, damages, as a result of which it is entitled to recover those damages in an amount to be determined at trial to compensate it for its losses together with pre- and post-judgment interest thereon.

## COUNT FOUR
### (Attorneys' Fees against Atlantic)

82.     IFMK repeats and realleges the preceding allegations as though fully set forth herein.

83.     Section 13.12 of the Operating Agreements provides: "In any arbitration or action to interpret or enforce this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs." *See, e.g.*, Ex. A, § 13.12.

84.     IFMK is entitled to its reasonable attorneys' fees and costs associated with this action, pursuant to § 13.12 of the Operating Agreements and applicable law.

## JURY DEMAND

IFMK demands a trial by jury of all issues so triable.

17

## **PRAYER FOR RELIEF**

WHEREFORE, IFMK respectfully requests that this Court:

a.      Enter judgment in favor of IFMK and against Defendants Atlantic Property

Development, LLC, Francis M. Ferrari, and Felix Nihamin;

b.      Impose a constructive trust with respect to the interests held by Atlantic, Ferrari,

and Nihamin, either directly or indirectly, in the LLCs;

c.      Rescind and declare null and void the Operating Agreements;

d.      Transfer title to the Properties to IFMK as the real party-in-interest by virtue of

its payment of the sums used to acquire the Properties and its status as the only

Member of the LLCs;

e.      Award IFMK damages in a precise amount to be determined at trial;

f.      Award IFMK its attorneys' fees and costs incurred in connection with this

action; and

g.      Award such other and further relief as the Court deems just and appropriate.


Dated: June 8, 2020                          By:     */s/ Karl Geercken*

Karl Geercken
Christopher J. Borchert
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400
Karl.Geercken@alston.com
Christopher.Borchert@alston.com

*Attorneys for Plaintiff IFMK Realty II, LLC*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.1, I hereby certify that the matter in controversy is related in part to an action pending in the Superior Court of New Jersey, Ocean County, Chancery Division, captioned *Alan Kapson, et al. v. Francis Ferrari, Jr., et al.*, Docket No. OCN-C-000078-20.  The plaintiffs in that action are Alan Kapson; Michele Kapson; Ronald Glazer; Robert Packer; and Dr. Paul Bernstein.  The defendants in that action are Francis Ferrari, Jr.; Atlantic Property Development, LLC; Crowne Acquisitions, LLC; 111 Georgian Drive, LLC; 107 Kingfisher, LLC; 113 Kingfisher, LLC; 115 Kingfisher, LLC; 206 Sailfish, LLC; 214 Ocean Bay, LLC; 313 Bayview, LLC; 331 North Bay, LLC; Finance of America Commercial, LLC; Mark Rekhtman; All State Realty, LLC; Chris Rogovich; and Steven Rogovich.

I hereby certify that the matter in controversy is not the subject of any other action pending in any court, arbitration, or administrative proceeding.  I certify under penalty of perjury that the foregoing is true and correct.


Dated: June 8, 2020                         By:     */s/ Karl Geercken*
                                                         Karl Geercken