**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IFMK REALTY II, LLC,<br>Plaintiff,<br>v.<br>ATLANTIC PROPERTY DEVELOPMENT, LLC, *et al.*,<br>Defendants. | Civil Action No. 20-6989 (MAS) (DEA)<br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff IFMK Realty II, LLC's ("IFMK") motion for default judgment (ECF No. 58) as to Defendant Felix Nihamin ("Nihamin") and amended damages application (ECF No. 61-1) as to Atlantic Property Development, LLC ("Atlantic"), Francis M. Ferrari ("Ferrari"), and Nihamin (collectively "Defendants"). Nihamin opposed (ECF No. 63), and IFMK replied (ECF No. 65). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants IFMK's motion for default judgment and orders a hearing to determine the proper amount of damages.

## I. BACKGROUND

On June 8, 2020, IFMK initiated this action against Defendants, asserting claims of fraud and breach of contract in connection with a real estate business venture. (*See generally* Compl., ECF No. 1.) IFMK alleges that Ferrari and Nihamin recruited IFMK to enter a joint venture with Atlantic in order to acquire, develop, and sell properties in New Jersey. (*Id.* ¶¶ 11-17.) IFMK claims that Ferrari was Atlantic's Chief Executive Officer, and Nihamin was Atlantic's General

Counsel and Director of Business Development. (*Id.* ¶¶ 3-4.) According to IFMK, Defendants solicited millions in seed capital from IFMK to purchase several properties, mortgaged the properties multiple times for their own financial benefit without informing IFMK and in violation of their operating agreements, and then defaulted on mortgage payments. (*Id.* ¶¶ 18-53.)

Atlantic and Ferrari failed to appear in this action, and on May 14, 2021, the Court entered default judgment against them with respect to liability only. (*See* Order and J. Granting IFMK's Mot. for Default J., ECF No. 31.) Nihamin filed a responsive pleading, which IFMK moved to strike based on Nihamin's repeated failures to comply with discovery requests and the Court's corresponding orders during this litigation. (*See* R. & R. 2-5, ECF No. 44.) The Hon. Douglas E. Arpert, U.S.M.J., issued a Report and Recommendation ("R. & R.") regarding Nihamin's litigation conduct, recommending that IFMK's motion to strike be granted, Nihamin's answer be stricken, and that default be entered against Nihamin. (*Id.* at 10-11.) The Court adopted the R. & R. in full, granting IFMK's motion to strike, striking Nihamin's answer, directing the Clerk of the Court to enter default against Nihamin, and granting IFMK leave to move for default judgment against Nihamin. (Order Adopting R. & R. 5, ECF No. 51.)

On April 28, 2023, IFMK moved for default judgment against Nihamin with respect to liability only. (IFMK's Moving Br., ECF No. 58-1.) That same day, IFMK also filed an application for damages against Atlantic, Ferrari, and Nihamin. (Damages Appl., ECF No. 59.) Less than two weeks later, on May 10, IFMK filed an amended damages application. (Am. Damages Appl., ECF No. 61-1.) On June 6, Nihamin opposed IFMK's motion for default judgment and its application for damages. (Nihamin Opp'n Br., ECF No. 63.) On June 13, IFMK filed its reply. (IFMK's Reply Br., ECF No. 65.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55[1] authorizes the Court to enter default judgment "against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. P. 55(b)(2); *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)). Prior to entering default judgment, the Court must determine whether it has subject-matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) (citing *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at * 1 (D.N.J. July 6, 2010)).

Three analyses guide the Court's discretion. First, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). Second, the Court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (citing *Comdyne I,*

---

[1] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

*Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Third, the Court must determine whether default judgment is appropriate by weighing three factors: "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at *3 (D.N.J. Jan. 11, 2018) (citing *Emcaso Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987)).

The Court's inquiry does not end there. "Default does not establish liability for the amount of damages claimed by the plaintiff." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-02782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.")). Thus, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

## III. DISCUSSION

### A. IFMK's Motion for Default Judgment Against Nihamin as to Liability

#### *1. Service was Proper*[2]

At the outset, the Court finds that IFMK's service of its Complaint was proper. Rule 4 allows service by "following state law for serving a summons in an action brought in courts . . . where the district court is located." Fed. R. Civ. P. 4(e)(1). The primary method of effecting proper service in New Jersey "is by causing the summons and complaint to be personally served." N.J.

[2] As previously indicated, Nihamin responded to the Complaint. Because the Court struck Nihamin's Answer, the Court evaluates the factors out of an abundance of caution.

Ct. Rules, R. 4:4-4(a). If, however, "personal service cannot be effected after a reasonable and good faith attempt . . . service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant." N.J. Ct. Rules, R. 4:4-3(a).

Here, the Summons filed in connection with this action against Nihamin clearly demonstrates that one week after attempting to personally serve Nihamin at his home on June 15, 2020, two copies of the Summons and Complaint were sent by certified and regular mail with return receipt requested. (*See* Summons, ECF No. 7.) The Court, accordingly, is satisfied that service has been properly effected on Nihamin.

*2. The Court Has Jurisdiction Over the Claims and the Parties*

Next, the Court finds that it has subject-matter jurisdiction over the claims asserted by IFMK and personal jurisdiction over the parties involved. First, with respect to subject-matter jurisdiction, Judge Arpert confirmed that this Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See* Op. 2-3, ECF No. 30.) Next, on a motion for default judgment, the Court takes as true all well-pleaded jurisdictional allegations in the Complaint to assess whether IFMK has made a *prima facie* showing of personal jurisdiction. *See Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015) (citations omitted). Here, the Court has personal jurisdiction over Nihamin because he is a resident of New Jersey. (*See* Compl. ¶ 4; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").)

### 3. *IFMK Has a Legitimate Cause of Action*

Having determined that service was proper and that the Court has jurisdiction, the Court next evaluates "whether the moving party's complaint establishes a legitimate cause of action" for fraud against Nihamin. *La. Counseling & Fam. Servs., Inc.*, 543 F. Supp. 2d at 365.

A common law fraud action requires a showing of five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). "Included within the first element are promises made without the intent to perform since they are 'material misrepresentations of the promisor's state of mind at the time of the promise.'" *Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*, 730 A.2d 406, 418 (N.J. Super. Ct. App. Div. 1999). Rule 9(b) applies to common law fraud claims, and, therefore, "the circumstances constituting fraud . . . shall be stated with particularity[,] including the who, what, where, when, and how of the alleged fraud." *Rickerson v. Pinnacle Foods Inc.*, No. 17-4469, 2018 WL 1704788, at *3 (D.N.J. Apr. 9, 2018) (alterations in original, internal quotations omitted.) "[M]alice, intent, knowledge, and other conditions of a person's mind[, however,] may be alleged generally." Fed. R. Civ. P. 9(b).

Here, the Court is satisfied that the Complaint sufficiently sets forth a cause of action for common law fraud against Nihamin and finds that IFMK's allegations are pled with the requisite particularity. According to the Complaint, Nihamin made a material misrepresentation of fact when making promises to IFMK about Atlantic's intentions with respect to potential business opportunities. (*See* Compl. ¶ 55.) Specifically, for example, IFMK alleges that:

> Nihamin repeatedly promised and assured IFMK that [he] and Atlantic would use their "extensive experience" and wherewithal to

> identify suitable properties for investment and development purposes and would use their good faith efforts to manage, develop, and operate the properties through the LLCs in the best interests of the LLCs and their members.

(*Id.*) At the time Nihamin made these promises, he purportedly had no intention of fulfilling them, but instead made the promises to induce IFMK to enter into an agreement with Atlantic. (*Id.* ¶¶ 56, 59.) According to IFMK, it reasonably relied on Nihamin's promises upon entering into the agreements and contributing capital, evidenced by IFMK's execution of the agreements. (*Id.* ¶ 61.) As a result of Nihamin's fraud, IFMK allegedly suffered damages. (*Id.* ¶¶ 24-32, 78.)

Nihamin contends that the Complaint contains insufficient allegations to demonstrate that he had actual knowledge of the falsity of any statements he allegedly made, noting that the Complaint only cites to actions or inactions on the part of Ferrari and Atlantic. (*See* Nihamin's Opp'n Br. 7-8, ECF No. 63; Compl. ¶ 58.) The Court disagrees, however, finding that Nihamin's repeated promises paired with Atlantic and Ferrari's subsequent failure to follow through on those promises provide sufficient allegations regarding the requisite mental state under Rule 9(b). *See Chaudhri v. Lumileds LLC*, No. 18-2167, 2018 WL 6322623, at *9 (D.N.J. Dec. 3, 2018) ("Mental elements of a cause of action must ordinarily be proven circumstantially, and even Rule 9(b) permits intent to be pled generally."). Critically, the Court notes that Judge Arpert previously found that these same allegations against Ferrari and Atlantic sufficiently stated a fraud claim against those defendants. (*See* Op. 3-5.) Thus, the Court finds that, taken as true, the facts alleged in the Complaint state a legitimate cause of action for fraud against Nihamin.

4. *Entry of Default Judgment is Appropriate*

Because IFMK has established a legitimate cause of action against Nihamin, the Court next considers whether entry of a default judgment is appropriate by weighing "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking

default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund*, 2018 WL 372167, at *3.

Here, the Court finds that all three factors weigh in favor of entering default judgment. First, the Court has no meritorious defenses to consider because Nihamin's Answer has been stricken. (Order Adopting R. & R. 5); *see also Shekia Grp., LLC v. Wholesale Cabinetry, LLC*, No. 17-1477, 2020 WL 1272192, at *3 (D.N.J. Mar. 17, 2020) (treating the allegations in the complaint as admitted by defendants after their answer was stricken and finding no meritorious defenses). Indeed, the sole defense Nihamin raises in opposition is that IFMK failed to properly plead the allegations of fraud, which this Court has already addressed. (*See* Nihamin's Opp'n Br. 9.) Second, IFMK has been prejudiced by Nihamin's actions, or rather inaction, in this litigation. Nihamin failed to comply with numerous discovery requests and Court orders, preventing IFMK from meaningfully prosecuting its case and vindicating its claims. (*See* R. & R. 8-9.) Third, the Court finds that Nihamin was culpable in bringing about this default. While Nihamin concedes that he failed to respond in a timely manner to requests for production of documents, he argues that he is not culpable because the punishment of striking his Answer was "unprecedented in response." (*See* Nihamin's Opp'n Br. 10.) The Court has already addressed this argument and found it meritless given the Court's authority under Rules 16 and 37. (*See* Op. 2-3.) Additionally, the Court emphasizes Judge Arpert's findings of Nihamin's "willful" violations of several court orders, including failing to appear at a telephone conference, failing to produce any discovery responses, and failing to respond to the Court's order to compel discovery. (*See* R. & R. 6-7, 9; *United States v. DiPiazza*, No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016) (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983)) ("[C]ulpable conduct means actions taken willfully or in bad faith.").)

The Court, accordingly, finds entry of default judgment appropriate because Nihamin has no meritorious defense, prejudiced IFMK based on his inaction, and was culpable in bringing about this default.

**B. IFMK's Damages Application**

Having obtained default judgment against Atlantic, Ferrari, and now, Nihamin, IFMK seeks damages in accordance with its amended damages application. (*See* Am. Damages Appl.) Notably, IFMK seeks several types of damages against all Defendants, including damages related to fraud, attorney's fees, punitive damages, and pre-judgment and post-judgment interest. (*Id.*) In total, Plaintiff seeks $3,482,930.43 in damages to be entered against Atlantic, Ferrari, and Nihamin jointly and severally. (*Id.* at 9.)

*1. Fraud Damages*

As discussed, the Complaint asserts a legitimate fraud claim against Atlantic, Ferrari, and Nihamin, and the Court has entered default judgment against all three Defendants. IFMK calculates its damages for fraud by aggregating its out-of-pocket costs from the fraud and ensuing events and then subtracting the proceeds from the sale of several properties involved in the scheme, totaling $2,901,352.16. (*See id.* at 2-4.) IFMK's out-of-pocket costs consist of: (1) its initial capital contributions; (2) settlement payments; (3) taxes, insurances, and repairs; and (4) attorney's fees and costs incurred in third-party litigation.[3] (*Id.* at 2-3.) Nihamin, the only defendant to contest the damages, opposes this total, arguing that IFMK has failed to show that the damages were foreseeable, and arguing that he should not be responsible for costs other than the initial capital contributions. (Nihamin's Opp'n Br. 14-16.)

[3] Although Plaintiff provides billing records from its third-party litigation, the nature of that third-party litigation is unclear from the current record before the Court.

2. *Attorney's Fees*

IFMK asserts a claim against Atlantic for attorney's fees and costs related to this litigation totaling $348,778.17. (*See* Compl. ¶¶ 82-84; Am. Damages Appl. 4-6.) Judge Arpert previously found that Atlantic is liable for attorney's fees in connection with this action, based on a provision in IFMK and Atlantic's operating agreements. (*See* Op. 7; Compl. Ex. A 32, ECF No. 1-1.) Now, however, IFMK argues that the Court should pierce the corporate veil and hold Ferrari and Nihamin liable for these attorney's fees through a theory of alter ego liability. (*See* Am. Damages Appl. 5-6.) IFMK alleges that Ferrari held himself out as Atlantic's Chief Executive Officer, while Nihamin held himself out as Atlantic's General Counsel and Director of Business Development. (*Id.*) IFMK bases its theory on the premise that Atlantic is "'little more than a legal fiction' . . . used by Ferrari and Nihamin to extract capital contributions from IFMK and mortgage financing from lenders, all for their own personal benefit." (*Id.*) Nihamin opposes this theory, arguing that despite his positions as General Counsel and Director of Business Development, IFMK fails to show that he is a "principal" of Atlantic as would be necessary for a theory of alter ego liability. (*See* Nihamin's Opp'n Br. 12-13.)

IMFK provides no allegations that could support an alter ego theory against Nihamin. (*See generally* Compl.) As such, IMFK cannot successfully argue that the alter ego theory should apply here against Nihamin. "A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc.*, 908 F.2d at 1149 (quoting 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure,* § 2688 at 444 (2d ed. 1983)). While alter ego liability typically must be established by clear and convincing evidence and is "notoriously difficult" to prove . . . at the default judgment stage "the determination of alter ego liability. . . depends only on the

allegations in the pleadings and does not require any fact finding at all." *Gerber v. A&L Plastics Corp.*, No. 19-12717, 2021 WL 3616179, at *5 (D.N.J. Aug. 16, 2021) (quoting *Doctor's Assoc. Inc. v. Singh-Loodu*, No. 13-3030, 2014 WL 4988389, at *3 (D.N.J. Oct. 6, 2014)).

"[U]nder New Jersey law, courts may pierce the corporate veil either to make a corporation's individual principals and their personal assets liable for the debts of the corporation or to make assets of the corporate entity available to satisfy the debts of a corporate insider so that the corporate entity and the individual will be considered one and the same." *Id.* (quoting *Twin Cap. Partners, LLC v. Wickstrom*, No. 20-2869, 2020 WL 6747026, at *4 (D.N.J. Nov. 17, 2020) (internal quotation marks and citations omitted). Under New Jersey law, in deciding whether it is appropriate to pierce the corporate veil under an alter ego theory, a court considers:

> (1) the [extent of the] shareholders' disregard of the corporate entity [which renders the corporation] a mere instrumentality for the transaction of their own affairs; (2) [whether] there is such a unity of interest and ownership that the separate personalities of the corporation and its owners no longer exist; and (3) [whether] adherence to the doctrine of the corporate entity would promote injustice or protect fraud. [If these factors are present,] the corporate identity will be deemed a fiction and disregarded.

*Matter of Velis*, 123 B.R. 497, 509 (D.N.J. 1991) (citation omitted) *rev'd on other grounds*, 949 F.2d 78 (3d Cir. 1991). Furthermore, "the Third Circuit fashioned a '[f]ederal rule,' which has been applied by judges in this District, for determining whether a corporation was functioning as an alter ego." *Id.* (quoting *Travelers Prop. Cas. Co. of Am. v. Quickstuff, LLC.*, No. 14-6105, 2016 WL 7231605, at *9 (D.N.J. Dec. 14, 2016)). The relevant factors for determining if a corporate entity is the alter ego of an individual under the federal rule include the following:

> [1] whether the corporation has non-functioning corporate officers or directors; [2] whether the corporation fails to observe corporate formalities; [3] whether the corporation is merely a facade for the operations of the dominant shareholder or shareholders; [4] whether the corporation is grossly undercapitalized for its purposes;

> [5] whether the corporation fails to pay dividends; [6] the absence of corporate records; and [7] whether corporate funds are siphoned off by dominant shareholders.

*Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.*, No. 04-1866, 2005 WL 3588482, at *10 & n.11 (D.N.J. Dec. 29, 2005) (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)); *see also Trs. of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003) (outlining these same factors and adding an eighth factor, "insolvency of [the] debtor corporation," as another factor for courts to consider).

Here, the Complaint contains insufficient allegations to warrant piercing the corporate veil under either the state or federal rule outlined above. Plaintiff points only to allegations that Ferrari and Nihamin "held themselves out" as executives of Atlantic and used the corporate form to personally benefit. (*See* Am. Damages Appl. 5-6.) Even if the Court generously construed these allegations to satisfy factors three and seven listed above, which these allegations likely do not do, Plaintiff still comes well short of sufficiently convincing the Court that piercing the corporate veil is appropriate on the facts alleged. *N.J. Bldg. Laborers' Statewide Pension Fund & Trs. Thereof v. CID Constr. Servs., LLC*, No. 15-3412, 2015 WL 5965627, at *4 (D.N.J. Oct. 14, 2015) (finding that while "[n]ot all of these factors need be present to apply the alter ego doctrine . . . 'specific, unusual circumstances'" are required for the alter ego doctrine to apply and finding application of the alter ego theory appropriate in the context of two corporations with many alleged specific, suspicious commonalities); *Am. Bell, Inc. v. Fed'n of Tel. Workers of Pa.*, 736 F.2d 879, 886 (3d Cir. 1984) (noting that loosely applying the alter ego theory risks rendering "the theory of limited liability useless"); *Pisani*, 646 F.2d at 88 (finding an appropriate case to apply the alter ego doctrine was one where a corporation was undercapitalized, corporate formalities were not observed, no dividends where paid, the corporation became insolvent, and there was siphoning of corporate

funds). For these reasons, and as "the determination of alter ego liability . . . depends only on the allegations in the pleadings," IMFK cannot successfully argue alter ego liability applies at the damages stage and collect default judgment against Nihimin on the allegations in the Complaint.

*3. Punitive Damages*

If the Court does not find Ferrari and Nihamin liable for attorney's fees as alter egos of Atlantic, IFMK alternatively contends that it should be awarded punitive damages from Ferrari and Nihamin in the amount of its attorney's fees. (*See* Am. Damages Appl. 6-7.) IFMK posits two justifications for punitive damages. First, IFMK points to Ferrari and Nihamin's deliberate actions in perpetrating this fraud scheme and the harm caused not only to IFMK, but to other victims. (*See id.* at 7.) Second, IFMK points to Ferrari's failure to appear in this case and Nihamin's misconduct during discovery. (*Id.*) Nihamin, in his opposition, contends that IFMK's allegations do not meet the standard necessary for punitive damages. (*See* Nihamin's Opp'n Br. 13-14.)

Punitive damages are a "limited remedy" under the New Jersey Punitive Damages Act ("NJPDA"). *Stanhope v. Bank of Am.*, 2016 WL 6645770, at *5 (D.N.J. Nov. 9, 2016) (citing *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir. 1978)). "Fraud, standing alone, without some additional aggravating element, will not sustain a claim for punitive damages." *Stanhope*, 2016 WL 6645770, at *5 (quoting *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1034 (D.N.J. 1995)). To recover damages under the NJPDA, a plaintiff must demonstrate "by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." *Stanhope*, 2016 WL 6645770, at *5. Actual malice is defined by the NJPDA as "an intentional wrongdoing in the sense of an evil-minded act." *Id.* (quoting N.J.S.A. 2A:15-15-5.12(a)). The NJPDA defines "wanton and

willful disregard" as a "deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.*

In *Stanhope*, the Court found actual malice sufficient to justify punitive damages where:

> [a] young man was blinded and paralyzed in an accident and received a modest sum to support him for the rest of his life. Over the course of an entire year, his mother and step-father, to whom he afforded limited access to his accounts due to his disabilities, stole most of his money to buy themselves 'lavish' items, and lied to him about it.

2016 WL 6645770, at *5. In *Son v. Kim*, on the other hand, a case more factually similar to the instant matter, the Court did not find actual malice and declined to award punitive damages on default judgment. No. 19-21411, 2021 WL 4237241, at *1 (D.N.J. Sept. 16, 2021). Specifically, the *Son* plaintiff alleged that the defendant fraudulently induced him to lend him "$200,000 by pretending to be the owner of a recycling business, which he was not, and pretending to have 'plentiful assets' in the form of four commercial vehicles to secure the loan, which was also untrue." The *Son* Court found that "[a]s pleaded in the Complaint, [p]laintiff's allegations describe the unfortunate but typical scenario of a trusting individual exploited and swindled out of a significant amount of money by a con man." *Id.* at *3. The *Son* Court found that "[t]hese allegations do not, however, rise to the level of actual malice or wanton and willful disregard necessary to justify an award of punitive damages." *Id.* The *Son* Court, consequently, found that the plaintiff could not recover punitive damages because he "failed to plead the requisite intent and culpability for an award of punitive damages under the NJPDA." *Id.*

Here, the Complaint raises commercial fraud allegations. Indeed, the Court previously found that the Complaint states a legitimate cause of action for fraud against Nihamin. Plaintiff, however, like the plaintiff in *Son*, alleges Defendants engaged in typical commercial "con man" behavior, and therefore, like in *Son*, Plaintiff fails to plead the requisite intent and culpability for

an award of punitive damages under the NJPDA. The Court, therefore, denies Plaintiff's request for an award of punitive damages against Ferrari and Nihamin.

*4. Pre-Judgment and Post-Judgment Interest*

IFMK also claims that it is entitled to pre-judgment and post-judgment interest in addition to its stated damages. (Am. Damages Appl. 7-8.) Based on an adjusted interest rate over four years,[4] IFMK claims that it is entitled to $245,594.27 in pre-judgment interest. (*Id.*) IFMK requests post-judgment interest to begin accruing on the date the final judgment is entered. (*Id.* at 8.) Nihamin's opposition, on the other hand, provides no express rebuttal related to the entry of pre-judgment and post-judgment interest. (*See generally* Nihamin's Opp'n Br.) The Court will afford Nihamin the opportunity to provide his position with respect to pre-judgment and post-judgment interest in a pre-damages hearing supplemental submission.

*5. Nihamin's Bankruptcy Distributions*

In Nihamin's opposition, he raises the fact that he is currently undergoing bankruptcy proceedings. (*Id.* at 9.) Because IFMK is an unsecured creditor in Nihamin's bankruptcy proceedings, it has already received $12,794.17 in plan distributions from Nihamin, which it deducts from the total amount it seeks. (Am. Damages Appl. 8.) Nihamin further argues that if he is found liable for damages asserted by IFMK, he will be unable to pay any amount so long as his bankruptcy is still pending, in light of the automatic stay. (Nihamin's Opp'n Br. 9.) IFMK refutes this, claiming that it has already initiated an adversary proceeding in Nihamin's bankruptcy case

---

[4] IFMK calculates the interest rate for pre-judgment interest by taking the yearly Cash Management Fund Rate and adding 2% to account for the severity of the damages. (Am. Damages Appl. 7-8.) For example, the Cash Management Fund Rate for the year 2020 is 1.57%, making the adjusted interest rate 3.57% for 2020. (*Id.* at 8.)

and will obtain an order in that case that Nihamin's fraud judgment is non-dischargeable under the Bankruptcy Code. (IFMK's Reply Br. 5.)

On March 2, 2021, the United States Bankruptcy Court for the District of New Jersey entered a Stipulation and Consent Order that:

> allow[s] IFMK to fully prosecute its claims against [Nihamin]-Debtor in the Federal Court Action to conclusion, including through final judgment and any and all appeals therefrom; *provided, however*, that the provisions of 11 U.S.C. § 362, including, without limitation, those provisions prohibiting execution, enforcement or collection of any award or judgement [sic] from, and against, any assets or properties of the Debtor's estate (as defined in section 541 of the Bankruptcy Code), shall remain in full force and effect, and neither IFMK nor any of its agents, attorneys or representatives shall make any effort in the Actions to collect from the assets or properties of the Debtor's estate prior to resolution of the Proof of Claim or the Adversary Proceeding as appropriate.

*See In re Nihamin*, Adv. Pro. No.: 21-1021, ECF No. 5. This Court, therefore, may decide Plaintiff's default judgment motion as to Nihamin. Once the Court determines the appropriate amount of damages, however, any collection efforts would be subject to further litigation in the bankruptcy court.

6. *Further Briefing and a Hearing is Necessary to Determine the Proper Amount of Damages.*

Based on the record before the Court, further briefing and a hearing is necessary to determine the appropriate amount of damages in this case. *See* Fed. R. Civ. P. 55(b)(2) (allowing the Court to conduct hearings to determine the amount of damages when entering a default judgment). The Court requires further briefing regarding (1) the apportionment of damages between Defendants;[5] (2) the calculation of pre and post-judgment interest; and (3) the nature of and costs incurred in IFMK's third-party litigation.

[5] IFMK seeks to hold Defendants jointly and severally liable.

## IV. CONCLUSION

For the foregoing reasons, IFMK's motion for default judgment is **GRANTED** with respect to liability. As to damages, the Court finds that further briefing and a hearing is required pursuant to Federal Rule of Civil Procedure 55(b)(2). The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE