**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IFMK REALTY II, LLC,

Plaintiff,

v.

ATLANTIC PROPERTY DEVELOPMENT, LLC, *et al.*,

Defendants.

Civil Action No. 20-6989 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff IFMK Realty II, LLC's ("Plaintiff") supplemental memorandum in support of its application for damages against Defendants Atlantic Property Development, LLC ("Atlantic"), Francis M. Ferrari ("Ferrari"), and Felix Nihamin ("Nihamin") (collectively "Defendants"). (ECF No. 71.) Nihamin opposed (ECF No. 73) and Plaintiff replied (ECF No. 74). For the reasons articulated below, the Court grants Plaintiff an award of $3,656,768.01.

## I. BACKGROUND

This matter's underlying facts and procedural history are well known to the parties, and therefore, the Court adopts its previous opinion (Op., ECF No. 67) and only recites those facts necessary to resolve the instant dispute.

On June 8, 2020, Plaintiff initiated this action against Defendants. (*See generally* Compl., ECF No. 1.) The Complaint alleged a common law fraud claim against Atlantic, Nihamin, and Ferrari ("Count One"); a claim for breach of the operating agreement against Atlantic ("Count

Two"); a claim for breach of fiduciary duty against Atlantic ("Count Three"); and also contained a request for attorneys' fees against Atlantic. (*See generally id.*) Defendants failed to answer, move, or otherwise respond to Plaintiff's Complaint.

On May 14, 2021, the Court entered default judgment against Atlantic and Ferrari for liability and attorneys' fees only. (*See* Order and J. Granting Pl.'s Mot. Default J., ECF No. 31.) Atlantic was held liable for Counts One, Two, and Three, and for $348,778.17[1] in attorneys' fees. (*See* May 14, 2021 Op. 7, ECF No. 30; Op. 10.) Ferrari was held liable for Count One. (*See* Order and J. Granting Pl.'s Mot. Default J.) On April 28, 2023, Plaintiff moved for default judgment against Nihamin with respect to liability on Count One only (Mot. Default J. against Nihamin, ECF No. 58) and filed an application for damages against Defendants (Damages Appl., ECF No. 59). Less than two weeks later, Plaintiff filed an amended damages application seeking $3,482,930.43. (Am. Damages Appl., ECF No. 61.) On October 31, 2023, the Court entered default judgment against Nihamin as to liability on Count One only. (Op.)

With respect to Plaintiff's amended damages application, the Court determined that: (1) as to fraud damages against Atlantic, Ferrari, and Nihamin, Plaintiff's out-of-pocket costs for attorneys' fees and costs incurred in third-party litigation are unclear from the record; (2) as to attorneys' fees and costs for this litigation, Plaintiff failed to successfully argue that an alter ego theory applies against Nihamin and Ferrari; (3) as to possible punitive damages, Plaintiff failed to plead requisite intent and culpability; and (4) as to pre- and post-judgment interest, Nihamin would

[1] Plaintiff asserts that when it "submitted its initial damages application, it had incurred $348,580 in attorney[s'] fees and $5,197.67 in costs, for a total of $348,778.17." (Suppl. Mem. Am. Damages Appl. 9-10.) Plaintiff alleges that it has since additionally "incurred $49,900.50 in attorney[s'] fees and $133.46 in costs to litigate this action" and therefore requests a total of $398,811.13. (*Id.*) For the same reasons explained by Judge Arpert in his May 14, 2021 opinion (May 14, 2021 Op. 7; *see also* Op. 10), the Court finds Atlantic liable for the revised amount of attorneys' fees and costs.

be afforded an opportunity to provide his position through a supplemental submission. (*See id.*) The Court, accordingly, directed further briefing regarding: (1) the nature of and costs incurred in Plaintiff's third-party litigation as related to fraud damages; (2) the calculation of pre- and post-judgment interest; and (3) the apportionment of damages between Defendants, given that Plaintiff seeks to hold Defendants jointly and severally liable. (*Id.* at 16.)

In accordance with the Court's directive, Plaintiff filed a supplemental memorandum in support of its application for damages. (Suppl. Mem. Am. Damages Appl., ECF No. 71.) Nihamin opposed (Nihamin's Opp'n Br., ECF No. 73) and Plaintiff replied (Pl.'s Reply, ECF No. 74). On April 19, 2024, the Court held a telephone conference on the parties' positions regarding Plaintiff's application for damages. (ECF No. 78.)

## II. LEGAL STANDARD

In determining damages in the context of a default judgment, the Third Circuit has stated the following:

> A consequence of the entry of a default judgment is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10 C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE, § 2688 at 444 (2d ed. 1983) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)). If the damages are not for a "sum certain or for a sum which can by computation be made certain," Fed. R. Civ. P. 55(b)(1), the "court may conduct such hearings or order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2).

*Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). "The district court has considerable latitude in determining the amount of damages" owed by a defaulting party. *Super 8 Worldwide, Inc. v. Urmita, Inc.*, No. 10-5354, 2011 WL 2909316, at *2 (D.N.J. July 18, 2011) (citations omitted). Indeed, "[it] is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."

*Cornwell Quality Tools Co. v. Blanco*, No. 16-5086, 2018 WL 2441750, at *2 (D.N.J. May 30, 2018) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).

## III. DISCUSSION

Plaintiff seeks to recover fraud-related damages, along with pre- and post-judgment interest for the entire judgment. (*See* Am. Damages Appl.) In terms of apportionment, Plaintiff seeks to hold only Ferrari and Nihamin jointly and severally liable, with Nihamin 60% responsible and Ferrari 40% responsible. (Suppl. Mem. Am. Damages Appl. 8-9.) The Court addresses these issues in turn.

### A. Fraud Damages: Nature and Costs Incurred in Plaintiff's Third-Party Litigation

As noted, the Court entered default judgment against Defendants for a legitimate fraud claim. (Op. 9.) Plaintiff calculated its damages for fraud by aggregating its out-of-pocket costs from the fraud and ensuing events ($6,010,447.03), and then subtracting the proceeds from the sale of several properties involved in the scheme ($3,109,094.87), totaling $2,901,352.16. (Op. 9 (citing Am. Damages Appl. 2-4).) Specifically, Plaintiff's out-of-pocket costs consist of: (1) its initial capital contributions; (2) settlement payments; (3) taxes, insurances, and repairs; and (4) $984,817.34 in attorneys' fees and costs incurred in third-party litigation. (*Id.* (citing Am. Damages Appl. 2-3).) The Court requested further briefing on only the last consideration. (*Id.* at 16.)

Generally, "each party must bear its own attorneys' fees." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (citing *Right to Choose v. Byrne*, 91 N.J. 287, 316 (1982)). But New Jersey courts may award attorneys' fees to a party who, "through the tort of another has been required to act in the protection of [its] interests by bringing or defending an action against a third person." *DiMisa v. Acquaviva*, 198 N.J. 547, 554 (2009)

(quoting RESTATEMENT (SECOND) OF TORTS § 914(2) (1979)); *see also AMEC Civil, LLC v. DMJM Harris, Inc.*, No. 06-64, 2009 WL 1883985, at *18 (D.N.J. June 30, 2009). A party is "required" to bring an action to protect its interests as a result of the tort of another, when "the litigation was a 'natural and necessary' consequence of the defendant's wrongdoing. Remote, uncertain and contingent consequences do not afford a basis for recovery." *AMEC Civil, LLC*, 2009 WL 1883985, at *18. In other words, "where the plaintiff allege[s] that the defendant's conduct was both the 'but for' cause and the proximate cause of its additional attorney's fees [incurred against third parties], plaintiff [has] adequately stated a claim for damages under New Jersey law." *Id.* (citing *Morganroth & Morganroth*, 331 F.3d at 416).

This case arose after Plaintiff gave "seed capital to Defendants to establish four LLCs to purchase properties" in Ocean County, New Jersey, with Defendants serving as the LLCs' managing members. (Suppl. Mem. Am. Damages Appl. 2.) Defendants then took out "multiple mortgages on each of the properties without informing [Plaintiff]; failed to pay the mortgage payments; and then defaulted on the loans." (*Id.*) Thereafter, "most of the lenders initiated foreclosure actions to foreclose on the properties." (*Id.*) Plaintiff sought to intervene in each of these foreclosure actions to save the properties from repossession (*see id.* at 2-8), but the courts denied Plaintiff's "motions to intervene on the grounds that [Plaintiff] was not the managing member [of the LLCs]" (*id.* at 3). Plaintiff, accordingly, had to bring actions in the New Jersey Superior Court, Chancery Division, to gain control of the LLCs. (*See id.* at 3, 5-6.) Once Plaintiff secured control of the LLCs, it litigated each of the foreclosure actions on behalf of the LLCs. (*See id.* at 3-4, 6-7.) Plaintiff alleges that it incurred $984,817.34 in attorneys' fees to retain the properties (*id.* at 7), and provided copies of its billing records related to the third-party litigation (*see* Pl.'s Ex. A, ECF No. 72).

Nihamin does not contest the dollar amount of Plaintiff's attorneys' fees. (Nihamin's Opp'n Br. 5-7.) He instead argues that Plaintiff is not entitled to recover *any* third-party litigation expenses because Plaintiff "was not required to litigate with the various entities that provided mortgages to [Defendants]." (*Id.* at 7 (stating that "[t]here was nothing specific or special about the properties involved that [Plaintiff] could not have simply attempted to recoup its losses on.").) Yet, Nihamin does not cite any case law to support the proposition that third-party litigation expenses are recoverable only where "specific or special" property is involved, and the Court declines the invitation to adopt such a rule.

The relevant question is whether Plaintiff entered into litigation with third parties as the natural and necessary result of Defendants' fraud. *AMEC Civil, LLC*, 2009 WL 1883985, at *18. Plaintiff has sufficiently demonstrated that the answer is yes—*but for* Defendants' conduct, Plaintiff would not have had to intervene in foreclosure actions against a host of mortgage lenders. *See In re Niles*, 176 N.J. 282, 296 (2003) (awarding third-party litigation expenses where "'[b]ut for' [defendant's] tortious conduct, the litigation that was the wellspring from which all counsel fees flowed would not have been necessary."). The Court thus finds that Plaintiff may recover $984,817.34 in attorneys' fees incurred during third-party litigation. The Court, therefore, awards Plaintiff a total of $2,901,352.16 for its fraud damages.[2]

[2] As noted in this Court's prior Opinion, Nihamin is currently in bankruptcy. (Op. 15-16.) Plaintiff is an unsecured creditor to Nihamin's bankruptcy estate, and "receives monthly plan distributions . . . in the approximate amount of $2,000 per month." (Correspondence from Nihamin's Att'y, ECF No. 79.) Plaintiff represents that it "will apply those payments against any outstanding amounts owed by Nihamin pursuant to a judgment entered in this case." (*Id.*) As of April 19, 2024, Plaintiff confirms that Nihamin has paid a total of $28,572.69. (*Id.*)

**B. Pre- and Post-Judgment Interest**

Plaintiff seeks prejudgment interest accruing from June 8, 2020 until this Court issues judgment, as well as post-judgment interest to accrue from the date of judgment. (*See* Suppl. Mem. Am. Damages Appl. 10-11.) Nihamin did not oppose the request. (Nihamin's Opp'n Br. 5.) The Court considers Plaintiff's proposed calculations below.

*i. Prejudgment Interest*

First, Plaintiff requests prejudgment interest on its fraud damages award of $2,901,352.16. (*Id.* at 11.) In diversity cases, federal courts must apply state law to award prejudgment interest. *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982). Under New Jersey law, an award of prejudgment interest is "based on equitable principles." *Atl. City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, No. 05-3227, 2010 WL 1371938, at *1 (D.N.J. Mar. 31, 2010) (citing *County of Essex v. First Union Nat'l Bank*, 186 N.J. 46, 61 (N.J. 2006)). Such an award "is subject to the discretion of the trial court." *Napp Techs., L.L.C. v. Kiel Lab'ys, Inc.*, No. 04-3535, 2008 WL 5233708, at *9 (D.N.J. Dec. 12, 2008) (internal citations omitted). Notably, Nihamin did not oppose Plaintiff's application for pre- and post-judgment interest and further "concede[d] on the percentages provided [by Plaintiff] . . . ." (Nihamin's Opp'n Br. 5.) The Court, accordingly, finds that prejudgment interest is warranted here.

This Court has previously discussed how awards of prejudgment interest are calculated, which is as follows:

> "[New Jersey Court Rule ("N.J. Ct. R.")] 4:42-11(a)(ii) sets the interest rate for judgments in tort actions, which 'absent unusual circumstances,' is also used for contract-based claims." *AMA Realty LLC v. 9440 Fairview Ave. LLC*, No. 13-457, 2020 WL 6559204, at *9 (D.N.J. Nov. 9, 2020) (quoting *Amba v. Rupari Food Servs., Inc.*, No. 10-4603, 2016 WL 6471019, at *4 (D.N.J. Oct. 31, 2016)). "Absent unusual circumstances . . . courts should refer to N.J. Ct. R.

> 4:42–11(b) when determining the rate of pre-judgment interest to be awarded." *Napp Techs., L.L.C.*, 2008 WL 5233708, at *9. . . .
>
> Pursuant to N.J. Ct. R. 4:42–11(a)(iii), "for judgments exceeding the monetary limit of the Special Civil Part, which is $15,000 . . . prejudgment interest shall be calculated at the rate provided in subparagraph (a)(ii) plus 2% per annum." *See Devine v. Advanced Computer Concepts Inc.*, No. 08-87, 2009 WL 78158, at *3 (D.N.J. Jan. 9, 2009). The applicable interest rate is calculated by adding 2% to the Cash Management Fund Rate. *Amba*, 2016 WL 6471019, at *4.

*USI Int'l Inc. v. Festo Didactic Inc.*, No. 15-8451, 2023 WL 3996360, at *3 (D.N.J. June 14, 2023). Here, the Court does not find any "unusual circumstances" that would justify a departure from the interest rate set forth in N.J. Ct. R. 4:42(a)(ii)-(iii), nor does Nihamin argue that such circumstances exist. (*See* Nihamin's Opp'n Br. 5.) The applicable prejudgment interest rates for the relevant years are as follows[3]:

| Year | Cash Fund Annual Rate | Additional Adjustment | Adjusted Prejudgment Interest Rate |
|---|---|---|---|
| 2020 | 2.5% | 2% | 4.5% |
| 2021 | 1.5% | 2% | 3.5% |
| 2022 | 0.25% | 2% | 2.25% |
| 2023 | 0.25% | 2% | 2.25% |
| 2024 | 3.50% | 2% | 5.50% |

Next, the Court must determine when the date on which prejudgment interest starts to accrue. *First Union Nat'l Bank*, 186 N.J. at 61-62. Plaintiff contends that the prejudgment interest should accrue starting on the date of filing the action, June 8, 2020. (*See* Suppl. Mem. Am. Damages Appl. 11.) The Court agrees that in this case, "prejudgment interest [should] accrue from

[3] Plaintiff provides its own prejudgment interest calculation, which Nihamin agrees with. (*See* Nihamin's Opp'n Br. 5.) Plaintiff, however, does not use the correct Cash Fund Annual Rates. *See Post-Judgment and Pre-Judgment Interest Rates*, N.J. CTS. (Nov. 8, 2023), https://www.njcourts.gov/sites/default/files/courts/civil/postprejudgmentrates.pdf (providing correct Cash Fund Annual Rates through 2024). The Court thus awards prejudgment interest according to the correct rates.

the date of the filing of the original complaint in this court." *In re Sakhe*, 656 B.R. 370, 404 (Bankr. D.N.J. 2023). Finally, "[t]he interest shall be awarded as simple interest. . . . [because a]bsent unusual circumstances, the judgment bears simple interest . . . ." *Carolee, LLC v. eFashion Sols., LLC*, No.12-2630, 2013 WL 5574594, at *5 (D.N.J. Oct. 9, 2013) (citing *Johnson v. Johnson*, 915 A.2d 85, 88 (App. Div. 2007)).

Thus, as applied to the judgment consistent with this opinion, and displayed below, the prejudgment interest awarded to Plaintiff is $356,604.72.[4]

| **Year** | **Interest Rate** | **Judgment** | **Per Diem** | **Days** | **Interest Owed** |
|---|---|---|---|---|---|
| 2020 | 4.50% | $2,901,352.16 | $356.72 | 206 | $73,485.07 |
| 2021 | 3.50% | $2,901,352.16 | $278.21 | 365 | $101,547.33 |
| 2022 | 2.25% | $2,901,352.16 | $178.85 | 365 | $65,280.42 |
| 2023 | 2.25% | $2,901,352.16 | $178.85 | 365 | $65,280.42 |
| 2024 | 5.50% | $2,901,352.16 | $436.00 | 117 | $51,011.48 |
| | | | | **Total** | **$356,604.72** |

*ii. Post-Judgment Interest*

Plaintiff requests "post-judgment interest from Nihamin and Ferrari for (1) the judgment; and (2) the prejudgment interest accrued". (Suppl. Mem. Am. Damages Appl. 12.) Plaintiff also seeks post-judgment interest "from Atlantic for (1) the judgment; (2) the prejudgment interest accrued; and (3) attorneys' fees and costs in the amount of $398,811.13." (*Id.*) Nihamin does not oppose this request. (*See* Nihamin's Opp'n Br. 5.)

[4] Calculation of the prejudgment interest is based on the date of this judgment, April 26, 2024.

This Court has previously articulated post-judgment interest as follows:

> "Post-judgment interest in federal court is governed by 28 U.S.C. § 1961, even in matters arising under diversity jurisdiction."[5] *Geiss v. Target Corp.*, No. 09-2208, 2015 WL 5227620, at *2 (D.N.J. Sept. 8, 2015) (citing *Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988)); *see also Talen Energy Mktg., LLC v. Aluminum Shapes, LLC*, No. 19-4303, 2021 WL 534467, at *5 (E.D. Pa. Feb. 12, 2021) ("As a general rule in federal cases where jurisdiction is based on diversity of citizenship, federal courts have held that post-judgment interest is governed by the federal post-judgment interest statute rather than by state law.").
>
> Under 28 U.S.C. § 1961, a post-judgment interest award is mandatory. *See Dunn v. HOVIC*, 13 F.3d 58, 60 (3d Cir. 1993). Post-judgment interest begins to run from the date of the entry of judgment and is computed daily until the judgment is paid in full. *Id.* Section 1961(a) directs that the post-judgment interest rate be set as "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." *Ifergan v. Ovadia*, No. 20-1064, 2021 WL 9667969, at *2 n.3 (D.N.J. July 12, 2021). "Section 1961(b) further directs the Court to compute interest 'daily to the date of payment' and to 'compound [interest] annually.'" *Int'l Transp. Mgmt. Corp. v. Brooks Fitch Apparel Grp., LLC*, No. 11-1921, 2020 WL 5525510, at *5 (D.N.J. Sept. 14, 2020).
>
> "[U]nder § 1961(a), an award must be granted pursuant to a 'money judgment' to trigger post-judgment interest"; to count as a money judgment, a judgment must include both "'an identification of the parties for and against whom judgment is being entered,'" and "'*a definite and certain designation of the amount* . . . owed.'" *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 175 (3d Cir. 2010) (citation omitted) (emphasis in original).

---

[5] This Court has previously acknowledged that although New Jersey Court Rule 4:42–11(a) outlines the criteria for post-judgment interest awards, *Karpas v. Trimark Sportswear Grp. (U.S.) Ltd.*, No. 04-5458, 2005 WL 1420822, at *6 (D.N.J. June 15, 2005), "[a]s a general rule in federal cases where jurisdiction is based on diversity of citizenship, federal courts have held that post-judgment interest is governed by the federal post-judgment interest statute rather than by state law." *See Festo Didactic Inc.*, 2023 WL 3996360, at *4 (quoting *Talen Energy Mktg., LLC*, No. 19-4303, 2021 WL 534467 (E.D. Pa. Feb. 12, 2021)).

*Festo Didactic Inc.*, 2023 WL 3996360, at *4. The weekly average 1-year constant maturity Treasury yield for the week preceding this judgment, April 15, 2024 through April 19, 2024, is 5.17%. *See Selected Interest Rates (Daily)*, BD. OF GOVERNORS OF FED. RSRV. SYS., https://www.federalreserve.gov/releases/h15/ (last visited April 23, 2024). Accordingly, the Court awards post-judgment interest at a rate of 5.17% to be applied to: (1) the fraud damages award of $2,901,352.16; (2) the prejudgment interest award of $356,604.72; and (3) $398,811.13 in attorneys' fees. That interest will compound annually, and will accrue from the date of this order, until the date of payment.

**C. Apportionment of Damages Between Defendants**

Finally, Plaintiff seeks to hold Defendants jointly and severally liable, and thus the Court directed further briefing on the apportionment of damages between Defendants. (Op. 16.) In its latest memorandum, Plaintiff asserts that Nihamin is 60% responsible and Ferrari is 40% responsible for Plaintiff's damages. (Suppl. Mem. Am. Damages Appl. 8.) Nihamin, however, avers that he should be found 5% responsible and Ferrari should be found 95% responsible for Plaintiff's damages. (Nihamin's Opp'n Br. 5.) Notably, although Atlantic was also found liable under Counts One, Two, and Three, neither party asserts that Atlantic should be held responsible for fraud damages.

"New Jersey law favors the apportionment of fault among responsible parties." *Krassan v. Havana, Inc.*, No. 14-1405, 2014 WL 6609117, at *3 (D.N.J. Nov. 20, 2014) (quoting *Boryszewski ex rel. Boryszewski v. Burk*e, 380 N.J. Super. 361, 374-75 (App. Div. 2005)). "[T]he quantum of evidence required [for apportionment] is low. The law favors apportionment even where the apportionment proofs are imprecise, allowing only for rough apportionment by the trier of fact." *Burk*e, 380 N.J. Super. at 383-84; *see also Poliseno v. Gen. Motors Corp.*, 744 A.2d 679, 689

(App. Div. 2000) ("The defendant was not required to produce evidence amounting to scientific or mathematical precision as to how much [it] contributed in percentage points to [plaintiff's injury]."). Thus, as required by New Jersey law, the Court examines Ferrari, Nihamin, and Atlantic's relative fault. *Scottsdale Ins. Co. v. Weiner*, No. 03-3857, 2009 WL 10689356, at *21 (D.N.J. June 17, 2009) ("In order to apportion fault . . . the Court is required to weigh the culpability of these parties." (citing *Blazovic v. Andrich*, 590 A.2d 222, 231 (N.J. 1991))).

*i. Ferrari*

As "the Chief Executive Officer of Atlantic," Ferrari played a central role in the fraud. (Compl. ¶ 3.) "Ferrari, as principal of Atlantic, accepted the money transferred from [Plaintiff]" to buy properties in Ocean County. (Nihamin's Opp'n Br. 4.) Ferrari "obtained the [fraudulent] loans" on all the properties, eventually triggering the foreclosure litigation in which Plaintiff later had to intervene. (Compl. ¶ 45.) And "Ferrari, on behalf of Atlantic, secured [those loans] . . . through fraudulent documentation and/or documentation that did not mention the need for [Plaintiff]'s prior written consent to the financing and did not accurately represent the ownership of the membership interests in [the three LLCs]." (*Id.* ¶ 47.) Ferrari also "purported to pledge 100% of the [m]embership interests in [the three LLCs] as collateral for [additional] loans from [other] investors." (*Id.* ¶ 51.) Ferrari, in other words, played an indispensable role in injuring Plaintiff. As Atlantic's CEO, he accepted money from Plaintiff, used that money to buy properties for Plaintiff, obtained loans on all those properties, and used fraud to obtain those loans. Accordingly, the Court finds Ferrari 60% responsible.

*ii.* *Nihamin*

Nihamin was "the General Counsel and Director of Business Development of Atlantic." (*Id.* ¶ 4.) In that role, Nihamin:

> (i) met personally with [Plaintiff's representative] to recruit [Plaintiff] as a victim for Defendants' fraud scheme; (ii) provided [Plaintiff's representative] with misleading marketing materials in furtherance of Defendants' fraud scheme; (iii) introduced [Plaintiff's representative] to his co-conspirator, Ferrari; (iv) coordinated and received [Plaintiff's] wire transfers consisting of the seed capital Defendants used to purchase the properties in furtherance of the fraud scheme; (v) drafted the operating agreements that prohibited the mortgage financing Defendants obtained from numerous lenders; and (vi) remained at all times [Plaintiff's] primary contact for Defendants.

(Suppl. Mem. Am. Damages Appl. 8-9.) Nihamin concedes to this description of his conduct. (*See* Nihamin Opp'n 4.) He instead argues that he is only 5% responsible because "Ferrari was in complete control of Atlantic, and was the principal who engaged in all contracts on behalf of Atlantic. Nihamin's only fault here is being a point of contact between [Plaintiff] and Ferrari." (*Id.* at 5.)

Nihamin's part in the fraud, however, is broader than he describes it. He was not merely Atlantic's attorney—he served as its Director of Business Development. (Compl. ¶ 4.) He cultivated and recruited Plaintiff into Defendants' scheme, facilitated Plaintiff's wire transfers to Atlantic, and structured the LLCs Atlantic eventually used to buy the properties. (Suppl. Mem. Am. Damages Appl. 8-9.) In other words, Nihamin was not a bystander—he was an active participant in the fraud. Based on the record, however, the Court does not find Nihamin more responsible than Ferrari, who fraudulently obtained mortgages against the properties Plaintiff invested in. (Compl. ¶ 45-51.) Accordingly, the Court holds Nihamin 35% responsible.

*iii. Atlantic*

Both parties seek to apportion fault only to Nihamin and Ferrari. (*See* Suppl. Mem. Am. Damages Appl. 8-9; Nihamin Opp'n 3-5.) This is because, in Plaintiff's telling, Atlantic was "merely an LLC that Nihamin and Ferrari used to perpetrate the fraud scheme." (Suppl. Mem. Am. Damages Appl. 8 n.6.)

The Court, however, declines to hold Atlantic blameless. Rather, Atlantic was found liable, along with Nihamin and Ferrari, for the fraud. (Op. 9.) Because Atlantic has been found *liable*, New Jersey law requires that this Court hold it proportionately *responsible*. *See, e.g.*, *Bolz v. Bolz*, 946 A.2d 596, 597 (App. Div. 2008) (holding that "allocation or apportionment of each [defendant's] negligence or fault *must* be assessed, even if there is a possibility that [one defendant] may not be liable for damages." (emphasis added)). To be sure, Atlantic is minimally responsible, as compared to Ferrari and Nihamin—but it is still the vehicle with which Ferrari and Nihamin injured Plaintiff. The Court, therefore, finds Atlantic 5% responsible.

In sum, Ferrari is 60% responsible; Nihamin is 35% responsible; and Atlantic is 5% responsible. Because Ferrari is over 60% responsible, joint and several liability applies as to him.[6]

---

[6] The Court notes that, under the Comparative Negligence Act:

> A prevailing party may recover "[t]he full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages" or "[o]nly that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less than 60% responsible for the total damages." [Further, a] joint tortfeasor is "entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share[.]"

*Ernest Bock & Sons, Inc. v. Dean Enters., Inc.*, No. 22-4739, 2023 WL 4268250, at *3 (D.N.J. June 29, 2023) (cleaned up).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff is granted damages amounting to a total award of $3,656,768.01. This award is comprised of $2,901,352.16 in fraud damages, $398,811.13 in attorneys' fees and costs, $356,604.72 in prejudgment interest, and post-judgment interest. Only Atlantic is liable for $398,811.13 in attorneys' fees and costs and related post-judgment interest. Ferrari is jointly and severally liable for the fraud damages and related pre- and post-judgment interest because Ferrari is 60% responsible. Nihamin is 35% responsible and Atlantic is 5% responsible. The Court will issue an Order and Judgment consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE